Filed 12/31/25 P. v. Johnson CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. ANGELO JOHNSON, Defendant and Appellant. | D084489 (Super. Ct. No. SCD300578) |


APPEAL from a judgment of the Superior Court of San Diego County, Yvonne E. Campos, Judge. Reversed with directions.

James M. Kehoe, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Anastasia Sagorsky, Deputy Attorneys General, for Plaintiff and Respondent.

# I.  INTRODUCTION

A jury found defendant Angelo Johnson guilty of felony reckless evasion of a police officer (Veh. Code,[1] § 2800.2) and the trial court placed him on formal probation for two years.  On appeal, Johnson contends insufficient evidence supports his conviction because the pursuing police officers' trial testimony conflicted with other evidence.  He also argues the trial court erred by failing to instruct the jury sua sponte on the lesser included offense of misdemeanor simple evasion (§ 2800.1).  Under the highly deferential substantial evidence review standard, we conclude the conflicting trial evidence nonetheless supports Johnson's conviction.  We also conclude, however, that these evidentiary conflicts were sufficient to raise a substantial question about whether all the elements of reckless evasion were present, warranting an instruction on the lesser included offense of simple evasion.  We conclude failure to give this instruction was prejudicial error.

Accordingly, we reverse the judgment with the direction that if the People do not timely elect to retry Johnson for reckless evasion, then the judgment shall be modified to reflect a conviction for simple evasion and the trial court shall resentence Johnson.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

#### 1.  Prosecution Evidence

Around 10:30 p.m. on September 13, 2023, uniformed San Diego Police Department officers Jean Garzanti and Colton Hofrichter were patrolling a

---

[1]    Statutory references are to the Vehicle Code unless otherwise indicated.

2

business district in a marked patrol car. A Chevy Malibu being driven by Johnson caught the officers' attention because it was driving faster than the flow of traffic, had no front license plate, had tinted windows, and one brake light was out. The officers initiated a traffic stop by driving behind Johnson, activating the patrol car's overhead emergency lights, and "chirp[ing]" the siren before eventually activating it continuously. Officer Garzanti drove while Officer Hofrichter operated the controls and radio from the front passenger seat.

Johnson stuck his arm out the window and pointed across the street to a well-lit shopping center, gesturing as if he intended to pull into it. However, Johnson drove past the shopping center without stopping and turned into a primarily residential area.

Johnson then led the officers on an 8- to 10-minute, two-mile pursuit. Officer Hofrichter reported to dispatch during the pursuit that traffic was light, speeds were low at times, and Johnson was stopping at most stop signs.

Officer Hofrichter also testified that Johnson committed four Vehicle Code violations during the course of the pursuit: (1) failing to stop behind the limit line at the intersection of Paradise Valley Road and Potomac Street; (2) failing to stop at a stop sign at the intersection of Potomac Street and Alta View Drive; (3) failing to stop at a stop sign at the intersection of Dissinger Avenue and Beatrice Street; and (4) failing to stop at a stop sign at the intersection of Keen Drive and Hutton Avenue. We discuss these in greater detail in part III.A., *post*.

The pursuit ended after other police officers deployed a "spike strip" that deflated the tires on Johnson's car. Johnson managed to keep driving for a while on deflated tires before abandoning his car in the middle of the road and running.

Officers Garzanti and Hofrichter pursued Johnson on foot and found him hiding in a dark area behind a camper trailer in a residential driveway. The officers held Johnson at gunpoint and gave him various commands. Johnson initially was noncompliant and argumentative but he eventually complied.

Body-worn camera footage of various portions of the vehicle pursuit and Johnson's apprehension were played at trial.

The trial court advised the jury that the court had determined via judicial notice that Johnson previously admitted to reckless evasion in 2008. The jury was instructed it could consider this information only in determining Johnson's specific intent to commit the current charged offense and not as propensity evidence.

### 2. Defense Evidence

Johnson's mother was the only defense witness. She testified she received a phone call from Johnson during the pursuit and he sounded scared.

### B. Procedural Background

The People charged Johnson with a single felony count of reckless evasion (§ 2800.2, subd. (a)).

A jury found Johnson guilty as charged.

The trial court placed Johnson on formal probation for two years, conditioned on (among other things) serving 365 days in jail, with eligibility for work furlough after serving 180 days.

## III. DISCUSSION

It is undisputed that misdemeanor simple evasion (§ 2800.1) is a lesser included offense of felony reckless evasion (§ 2800.2) and that "[t]he only

distinction between the two crimes" is that the greater offense requires proof of the additional element that "the defendant [drove] the pursued vehicle 'in a willful or wanton disregard for the safety of persons or property.' " (*People v. Springfield* (1993) 13 Cal.App.4th 1674, 1680 (*Springfield*), quoting § 2800.2, subd. (a).)[2] The greater offense's additional element can be established by proving that during the evasion the defendant committed "three or more violations that are assigned a traffic violation point count under Section 12810." (§ 2800.2, subd. (b);[3] see *People v. Diaz* (2005) 125 Cal.App.4th 1484, 1486.)

Johnson "does not contest" that the prosecution established he committed two qualifying Vehicle Code violations during the pursuit. He maintains, however, that the evidence is insufficient to establish that he committed the requisite minimum of *three* qualifying traffic violations. We disagree. Alternatively, Johnson contends the trial court erred prejudicially by failing to instruct the jury sua sponte regarding the lesser included offense of simple evasion. We agree.

---

[2]    Section 2800.2, subdivision (a) states:  "If a person flees or attempts to elude a pursuing peace officer in violation of Section 2800.1 and the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property, the person driving the vehicle, upon conviction, shall be punished . . . ."  Because the elements of the lesser offense under section 2800.1 are not at issue here, we do not discuss them.

[3]    Section 2800.2, subdivision (b) states:  "For purposes of this section, a willful or wanton disregard for the safety of persons or property includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count under Section 12810 occur, or damage to property occurs."  Johnson does not dispute that the traffic violations at issue here would, if established, qualify under sections 2800.2, subdivision (b) and 12810.

5

## A. Additional Background

Officer Hofrichter testified at trial that during the pursuit Johnson committed "[a]pproximately four" Vehicle Code violations that were "[a] mix of fail[ing] to yield at stop signs and . . . stoplights."

### 1. Paradise Valley Road and Potomac Street

The first disputed Vehicle Code violation occurred at the intersection of Paradise Valley Road and Potomac Street. At trial, Officer Hofrichter testified on direct examination that Johnson "fail[ed] to yield at the limit line on the stoplight."

On cross-examination, Officer Hofrichter acknowledged that he previously characterized this violation in his police report and preliminary hearing testimony as Johnson "travel[ing] through a red circular traffic light . . . *without stopping*." The officer reconciled this apparent discrepancy by explaining that "running a red light and limit line are all-encompassing" — "if you go through a red light you're running a [limit] line" and if "you cross the limit line you cross the red light." Thus, while both officers acknowledged that Johnson stopped at this intersection, Officer Hofrichter maintained Johnson stopped beyond the limit line.

Officers Garzanti and Hofrichter further acknowledged that neither of them orally called out this alleged violation to the other officer or to dispatch during the pursuit, as they did with the two violations Johnson does not contest. The body-worn camera footage confirms this. Officer Garzanti clarified that he was driving and thus it was Officer Hofrichter's job to document violations. Officer Hofrichter explained that no agency policy requires officers to document pursuits on a "second-by-second" or "minute-by-minute" basis.

6

The body-worn camera footage shows portions of the interior of the patrol car and a partial view through the windshield. Johnson's vehicle is never visible through the windshield view, but traffic signals, streetlights, street trees, and buildings are. At the intersection of Paradise Valley Road and Potomac Street, the footage through the windshield shows the patrol car coming to a complete stop at the red traffic light for several seconds before proceeding through the intersection after the signal light turns green.

### 2. Potomac Street and Alta View Drive

The second disputed Vehicle Code violation occurred at the intersection of Potomac Street and Alta View Drive. At trial, Officer Hofrichter testified on direct examination that Johnson "[f]ail[ed] to stop at a stop sign."

On cross-examination, Officer Hofrichter testified he documented this violation in his police report as Johnson failing to "stop[] at the posted limit line." He acknowledged at trial, however, that he did not recall whether there was a posted limit line or crosswalk at this intersection.

Officers Garzanti and Hofrichter further acknowledged that neither of them orally called out this alleged violation to the other officer or to dispatch during the pursuit. The body-worn camera footage confirms this.

The windshield view of the body-worn camera footage shows the patrol car come to a stop or near-stop about one car-length behind the stop sign at this intersection.

### 3. Dissinger Avenue and Beatrice Street

The third Vehicle Code violation, which Johnson does not dispute, occurred at the intersection of Dissinger Avenue and Beatrice Street. At trial, Officer Hofrichter testified Johnson "[f]ail[ed] to stop at the stop sign."

7

The body-worn camera footage shows that a few seconds before the patrol car reaches this intersection, Officer Hofrichter said something to the effect of, "I'll start calling out all [the violations he does]." About two seconds later, the officer said, "He blows the stop sign" at this intersection. The footage shows the patrol car drive through the intersection after coming to a near stop at the stop sign.

### 4. Keen Drive and Hutton Avenue

The fourth Vehicle Code violation, which Johnson does not dispute, occurred at the intersection of Keen Drive and Hutton Avenue. At trial, Officer Hofrichter testified that Johnson's violation at this intersection was "failing to stop at a stop sign."

The body-worn camera footage shows that as the patrol car approaches this intersection, Officer Hofrichter said, "Blew the stop sign" at this intersection. The footage shows the patrol car travel through this intersection without stopping.

### B. Substantial Evidence Supports Johnson's Conviction

" 'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence — evidence that is reasonable, credible and of solid value — such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Houston* (2012) 54 Cal.4th 1186, 1215; accord, *People v. Oyler* (2025) 17 Cal.5th 756, 819–820.) " 'Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact.

8

[Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction.' " (*People v. Ramirez* (2022) 13 Cal.5th 997, 1118 (*Ramirez*); see *People v. Jennings* (2010) 50 Cal.4th 616, 638 (*Jennings*) ["We neither reweigh the evidence nor reevaluate the credibility of witnesses."].) "If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Jennings*, at p. 639.)

We conclude the record contains substantial evidence that Johnson committed qualifying traffic violations at the contested intersections.

### 1. Paradise Valley Road and Potomac Street

Officer Hofrichter testified at trial that Johnson "fail[ed] to yield at the limit line on the stoplight" at the intersection of Paradise Valley Road and Potomac Street. The officer's testimony based on his firsthand observations during the pursuit is sufficient to establish this violation. (See *Ramirez*, *supra*, 13 Cal.5th at p. 1118; *Jennings*, *supra*, 50 Cal.4th at p. 638.)

Johnson argues Officer Hofrichter's "shifting testimony" was simply not credible because the officer was impeached at trial with his police report and preliminary hearing testimony in which he characterized the traffic violation at this intersection as Johnson "travel[ing] through a red circular traffic light . . . *without stopping*." Officer Hofrichter reconciled this apparent discrepancy by explaining that he views running a red light and failing to stop behind a limit line as "all-encompassing" or one in the same. It was exclusively the jury's role to resolve these conflicts in testimony. (See *Ramirez*, *supra*, 13 Cal.5th at p. 1118.) Indeed, Johnson's trial counsel made

9

this argument to the jury in closing argument and the jury apparently rejected it.

Johnson also argues on appeal (as his trial counsel likewise argued in closing argument) that because the officers orally logged traffic violations at *other* intersections but not *this* one, then no violation occurred at this intersection. However, Officer Hofrichter testified that no agency policy requires officers to document pursuits on a "second-by-second" or "minute-by-minute" basis. Further, the body-worn camera footage shows Officer Hofrichter say during the pursuit (but after the violation at this intersection) that he will "*start* calling out all [the violations he does]." While the jury could reasonably have drawn a "dog that did not bark" inference about this intersection, the jury was not required to do so. (See *Ramirez*, *supra*, 13 Cal.5th at p. 1118.)

Finally, relying on the body-worn camera footage, Johnson argues that "the positioning of the vehicles and the lighting situation at night" show that Officer "Hofrichter's claim that [Johnson] committed a line limit violation" is simply not credible. Again, while this is an inference the jury *could have* drawn from the footage, the footage is not so certain as to *compel* this conclusion. (See *Ramirez*, *supra*, 13 Cal.5th at p. 1118 [" 'unless . . . testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction' "].)

### 2. Potomac Street and Alta View Drive

Similarly, Officer Hofrichter's testimony at trial that Johnson "[f]ail[ed] to stop at a stop sign" at the intersection of Potomac Street and Alta View Drive is sufficient to establish the violation at this intersection. (See *Ramirez*, *supra*, 13 Cal.5th at p. 1118.)

As with the other contested violation, Johnson again cites apparent inconsistencies in Officer Hofrichter's testimony (e.g., that he could not recall whether there was a painted limit line or crosswalk at this intersection) and the logical inference arising from the officers calling out other traffic violations but not this one. Again, however, these were issues for the jury to resolve. (See *Ramirez*, *supra*, 13 Cal.5th at p. 1118.)

Johnson also argues that the body-worn camera footage "suggests that [he] *did* stop" at this intersection. That is, because the patrol car was directly behind Johnson's car, and because the footage shows that the patrol car "stopped or came very close to a complete stop behind a car at the stop sign," then "[i]t is logical to assume" that Johnson's car is stopped at the stop sign in front of the patrol car. The jury was not required to follow these "suggest[ions]" or make these "assum[ptions]." Moreover, applying Johnson's logic, if the patrol car mirrored Johnson's car's actions, then the patrol car coming "*very close* to a complete stop" would establish that Johnson's car likewise came *very close* — but not all the way — to a complete stop.

Again relying on body-worn camera footage, Johnson argues it "would have been exceedingly difficult for the officers to determine with any certainty that [Johnson]'s car in front of them was over the limit line." But *difficult* is not "physically impossible." (*Ramirez*, *supra*, 13 Cal.5th at p. 1118.) Because Johnson's car is not visible in the footage, the footage does not conclusively establish the car's position or disprove the officer's testimony.

### 3. Johnson's Reliance on Other Cases is Misplaced

Johnson also argues the evidence was insufficient to establish that he drove recklessly during the pursuit because his driving was not as egregious as the driving in other cases in which the appellate courts found substantial

evidence supported this element of the offense.  But as Johnson acknowledges, "[w]hen we decide issues of sufficiency of evidence, comparison with other cases is of limited utility, since each case necessarily depends on its own facts."  (*People v. Thomas* (1992) 2 Cal.4th 489, 516.)

## C. The Trial Court Erred Prejudicially by Failing to Instruct on the Lesser Included Offense of Simple Evasion

Johnson did not ask the court to give the jury instruction on simple evasion, the lesser offense to reckless evasion.  However, " 'California law has long provided that even absent a request, and over any party's objection, a trial court must instruct a criminal jury on any lesser offense "necessarily included" in the charged offense, if there is substantial evidence that only the lesser crime was committed.  This venerable instructional rule ensures that the jury may consider all supportable crimes necessarily included within the charge itself, thus encouraging the most accurate verdict permitted by the pleadings and the evidence.'  [Citation.]  '[T]he rule prevents either party, whether by design or inadvertence, from forcing an all-or-nothing choice between conviction of the stated offense on the one hand, or complete acquittal on the other.' . . .  Thus, 'a trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence.  On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support.' "  (*People v. Smith* (2013) 57 Cal.4th 232, 239–240; see *People v. Breverman* (1998) 19 Cal.4th 142, 154 (*Breverman*).)  In this context, "substantial evidence" is not " ' " "*any* evidence, no matter how weak' " ' "; it is " 'evidence that a reasonable jury could find persuasive.' "  (*People v. Williams* (2015) 61 Cal.4th 1244, 1263.)  "[I]f there is no proof, other than an unexplainable rejection of the prosecution's evidence, that the offense was less than that

charged, such instructions shall not be given." (*People v. Kraft* (2000) 23 Cal.4th 978, 1063 (*Kraft*).)

Although we concluded above that substantial evidence supports the finding that Johnson committed at least three qualifying Vehicle Code violations during the pursuit, there is also substantial evidence that he did *not* commit at least three qualifying violations. We find *Springfield*, *supra*, 13 Cal.App.4th 1674 instructive. There, our court concluded that although the pursuing officers' testimony constituted substantial evidence that the defendant *did* drive recklessly, the defendant's testimony that he did *not* drive recklessly constituted substantial evidence that he committed only the lesser included offense of simple evasion such that the trial court's failure to instruct the jury on that theory was reversible error. (*Id*. at pp. 1680–1681.)

Similarly, here, although Johnson did not testify at trial, there was still conflicting testimony from the officers themselves about whether Johnson drove recklessly during the pursuit. Specifically, as to the intersection of Paradise Valley Road and Potomac Street, Officer Hofrichter testified on direct examination that Johnson's vehicle code violation was "failing to yield at the limit line on the stoplight." On cross-examination, however, the officer acknowledged that he characterized the violation in his police report and preliminary hearing testimony as Johnson "travel[ing] through a red circular traffic light . . . *without stopping*." In addition, Officers Hofrichter and Garzanti both testified that Johnson stopped for the red light before traveling through the intersection, and the body-worn camera supports this conclusion. Further, the officers also acknowledged that whereas they orally called out other traffic violations during the pursuit, they did not do so for this one. Although the officers offered explanations at trial for these apparent discrepancies, the jury was not required to accept them. Moreover, the

13

conflicts in the officers' own testimony provided a valid basis on which the jury could find that the prosecution failed to establish beyond a reasonable doubt that Johnson committed a qualifying traffic violation at this intersection. (Cf. *Kraft*, *supra*, 23 Cal.4th at p. 1063 ["*unexplainable* rejection of the prosecution's evidence" does not constitute substantial evidence that the lesser included offense was committed (italics added)]; *People v. Abilez* (2007) 41 Cal.4th 472, 514 ["Because there was no reason why the jury would have rejected the prosecution's evidence and defendant presented no evidence . . . , there was no substantial evidence . . . for instructing the jury on . . . a lesser included offense"].)

There are similar evidentiary conflicts as to the violation at the intersection of Potomac Street and Alta View Drive. Officer Hofrichter testified on direct examination that Johnson "[f]ail[ed] to stop at a stop sign." On cross-examination, however, the officer acknowledged that he wrote in his police report that Johson failed to "stop[] at the *posted limit line*," even though the officer further acknowledged on cross-examination that he did not recall if there was a posted limit line or crosswalk at this intersection. And, again, both officers testified they did not orally log a violation at this intersection as they did at others. Further, the body-worn camera footage is also inconclusive as to whether Johnson failed to stop at the limit line because the footage shows the patrol car come to a stop or near stop about one car-length from the stop sign, leaving room for the jury to reasonably reject the officers' testimony and to find that the prosecution failed to establish beyond a reasonable doubt that Johnson did not stop before entering the intersection.

Because the officers' conflicting trial testimony raised substantial questions as to whether Johnson committed the disputed traffic violations,

the jury had a valid basis on which to potentially reject the prosecution's evidence and find that the prosecution failed to establish beyond a reasonable doubt that any violations occurred. Without those violations, the prosecution failed to establish the requisite number of qualifying traffic violations for reckless evasion, leaving substantial evidence that Johnson committed only the lesser included offense of simple evasion. Accordingly, the trial court erred by failing to instruct the jury sua sponte regarding this lesser included offense.

Having found error, we must now determine whether it prejudiced Johnson. We apply the " ' "generally applicable California test for harmless error" ' " set forth in *People v. Watson* (1956) 46 Cal.2d 818, under which " 'we deem an error harmless unless it is "reasonably probable" the outcome would have been different in the absence of the error.' " (*People v. Schuller* (2023) 15 Cal.5th 237, 251; see *id.* at p. 260 ["emphasiz[ing]" that other than in cases involving "the 'unique' relationship between murder and voluntary manslaughter [citation], . . . the general rule [is] that the failure to instruct on other forms of lesser included offenses in noncapital cases is an error of state law"].) A reasonable probability " ' " 'in this context does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility.' " ' " (*People v. Hendrix* (2022) 13 Cal.5th 933, 944.) " 'In assessing prejudice, we consider both the magnitude of the error and the closeness of the case.' " (*People v. Vasquez* (2018) 30 Cal.App.5th 786, 798.) Applying this standard, we find the error here prejudicial.

The magnitude of the error was significant. The People charged Johnson with only a single count of felony reckless evasion. This "forc[ed] the jury into an 'unwarranted all-or-nothing choice' " (*People v. Hughes* (2002) 27 Cal.4th 287, 365) of convicting him of the greater offense or of nothing at

15

all. Considering that Johnson led police on an approximately 10-minute pursuit that ended only after police deployed a spike strip to deflate Johnson's tires, that Johnson then fled on foot and hid in the dark, and then defied police commands and was argumentative, the jury would likely have believed Johnson was " 'plainly guilty of *some* offense.' " (*Ibid*.) But by failing to instruct on the lesser included offense of simple evasion, the trial court put the jury in the untenable position of choosing between convicting him of the greater offense or acquitting him altogether.

The case was also close. The evidence was strong that Johnson committed two qualifying traffic violations during the pursuit. Indeed, he essentially conceded the point at trial. But due to the extensive conflicting evidence discussed above, the case was close as to whether Johnson committed qualifying traffic violations at the intersections of Paradise Valley Road and Potomac Street and at Potomac Street and Alta View Drive. The fact that the jury ultimately resolved these conflicts against Johnson does not impact our prejudice analysis. (See *People v. Brown* (2016) 245 Cal.App.4th 140, 156 ["in assessing prejudice, 'it does not matter that the jury chose to convict the defendant of the greater offense over acquittal or that the defendant was convicted of the greater offense on sufficient evidence' " because to "hold otherwise would undermine the very purpose of the sua sponte rule"], citing *Breverman, supra,* 19 Cal.4th at p. 178, fn. 25.)

We thus conclude there is a reasonable probability that Johnson would have achieved a better outcome at trial had the court instructed the jury regarding the lesser included offense of simple evasion.

When, as here, substantial evidence supports the greater offense but the trial court prejudicially erred in failing to instruct on the lesser offense, the proper remedy is to reverse the conviction on the greater offense, give the

16

People an opportunity to retry the defendant on that charge, and order that the conviction be modified to the lesser offense if the People elect not to retry the defendant.  (See *People v. Kelly* (1992) 1 Cal.4th 495, 528; *Springfield, supra*, 13 Cal.App.4th at p. 1681.)  We will do so here.

## IV.  DISPOSITION

The judgment is reversed.  Johnson may be retried for felony reckless evasion.  However, if the People fail to bring Johnson to a new trial in a timely manner (see Pen. Code, § 1382, subd. (a)(2)), our remittitur shall be deemed to modify the verdict by reducing the conviction from reckless evasion to misdemeanor simple evasion (§ 2800.1), and the trial court shall promptly resentence Johnson.

RUBIN, J.

WE CONCUR:


IRION, Acting P. J.


DATO, J.

17